**GRUMMAN AIRCRAFT ENGINEERING CORPORATION, Appellant,**

v.

**The RENEGOTIATION BOARD.**

No. 22635.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 2, 1969.

Decided March 10, 1970.

Mr. Charles W. Colson, Washington, D. C., with whom Mr. Tom M. Schaumberg, Washington, D. C., was on the brief, for appellant.

Mr. Irwin Goldbloom, Attorney, Department of Justice, with whom Messrs. Thomas A. Flannery, U. S. Atty., Morton Hollander and Harland F. Leathers, Attys., Department of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

BAZELON, Chief Judge.

This is an appeal from a summary judgment refusing to order production of documents under the Freedom of Information Act.[1] The issue in the case is the scope of the statutory exemption for confidential information furnished to a federal administrative agency. Appellant, an aerospace contractor, seeks an order compelling the Renegotiation Board to produce (1) the orders and opinions[2] issued during the renegotiation of the contracts of fourteen companies during the years 1962 to 1965, and (2) certain documents relating to Grumman's own renegotiations for 1965. The Board contends that the documents are exempt from disclosure because they contain trade secrets and other confidential information. The court below granted the Board's motion for summary judg-

---

1. 5 U.S.C. § 552 (Supp. IV, 1969).

2. The phrase "orders and opinions" is employed here to encompass the "final opinions, determinations, unilateral orders, agreements, clearance notices and letters not to proceed" which appellant requested from the Board. See 32 C.F.R. § 1480.8 (1967); 5 U.S.C. § 551(6) (Supp. IV, 1969). In addition to the "Statement of Facts and Reasons" provided by the Board pursuant to 50 App. U.S.C. § 1215 (a) (1964), the term "opinion" may also include appellant's request for the "summaries of facts and reasons" on which other "unilateral orders and agreements" are based. As the record now before us does not adequately describe these "summaries," it will be for the District Court on remand to determine whether they have the status of final agency opinions.

ment, without opinion. We conclude that the statute does not render the documents completely immune from disclosure. Accordingly, we reverse the District Court's judgment and remand for further proceedings to determine which documents (or parts thereof) are available to appellant under the Act.

## I.

The Board has always regarded its opinions and orders as confidential and therefore not subject to release under section 3 of the Administrative Procedure Act.[3] The authority for such a blanket denial of access to orders and opinions was removed by the Freedom of Information Act, which took effect on July 4, 1967. Government agencies are now required to make available to the public their "final opinions, including concurring and dissenting opinions, as well as orders." [4]

The Board contends, however, that the opinions and orders in question are exempted from the Act's broad disclosure requirements because they include data submitted "in confidence" to the Board by defense contractors. The Board's argument is grounded in the statutory exemption for "(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential." [5] This provision was designed to prevent the unwarranted invasions of personal privacy which might be caused by the Government's indiscriminate release of confidential information.[6] The statutory history does not indicate, however, that Congress intended to exempt an entire document merely because it contained some confidential information.[7] On the contrary, should data which falls within Exemption (4) appear in any Board opinion or order,[8] both the Act and the Board's

3. The Board's operations are excluded from the requirements of all parts of the APA except section 3. 50 App. U.S.C. § 1221 (1964). Section 3 formerly permitted nondisclosure of orders and opinions which were "required for good cause to be held confidential." 5 U.S.C. § 1002(b) (1964). The Board imparted secrecy to all its orders and opinions by employing the presumption that, as a matter of law, they *all* came within this exception. 32 C.F.R. § 1480.8 (1967) ; 17 Fed.Reg. 2542 (1952).

4. 5 U.S.C. § 552(a) (2) (A) (Supp. IV, 1969). *Cf.* 32 C.F.R. § 1480.5 (1969). The reason for requiring concurring and dissenting, as well as majority, opinions to be made public was that "five agencies —including * * * the Renegotiation Board—do not make public the minority views of their members," although the public is entitled to know the opinions of all agency members. H.R.Rep.No. 1497, 89th Cong., 2d Sess. 8 (1966).

5. 5 U.S.C. § 552(b) (4) (Supp. IV, 1969). *Cf.* 32 C.F.R. § 1480.9(4) (1969). The Board also cites another statutory exemption which covers matters that are "(3) specifically exempted from disclosure by statute." 5 U.S.C. § 552(b) (3) (Supp. IV, 1969). Appellee argues that its opinions and orders are brought within this exemption by 18 U.S.C. § 1905 (1964), which punishes public officials who divulge

"in any manner or to any extent not authorized by law" information submitted to them by any person on his trade secrets, income and the like. Unlike other statutes which specifically define the range of disclosable information, *e. g.* 26 U.S.C. § 6103 (1964), as amended (Supp. IV, 1969), section 1905 merely creates a criminal sanction for the release of "confidential information." Since this type of information is already protected from disclosure under the Act by § 552(b) (4), section 1905 should not be read to expand this exemption, especially because the Act requires that exemptions be narrowly construed. 5 U.S.C. § 552(c) (Supp. IV, 1969).

6. S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965).

7. *Id.* at 7 ; H.R.Rep.No.1497, *supra* note 4, at 8.

8. The "deletion" provision of the Act refers to "opinions" but not to "orders," because it apparently contemplates that "orders" are merely summary statements of agencies' final adjudicative action and are accompanied by "opinions" setting forth the agencies' principles and reasoning. See Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act 18 (1967). The renegotiation process clearly does not fit this pattern, since 90%

regulations [9] recognize that the interests of confidentiality can be protected by striking identifying details prior to releasing the document.[10] The District Court's judgment, permitting appellee to deny the public all access to its orders and opinions, must therefore be reversed and the cause remanded to allow appellant access to the orders and opinions requested after appellee has made suitable deletions.

■ A request for the orders and opinions concerning a single contractor would clearly create a problem of confidentiality. In the present case this problem does not exist because appellant has requested orders and opinions relating to fourteen contractors, and their release en masse without identifying details will preserve anonymity. In the future, the Board can avoid the problem by deleting identifying details from each opinion or order and then making it available to public inspection as a matter of course.[11] This procedure will fulfill the statutory mandate by exposing to public scrutiny the agency's discharge of its functions while protecting the privacy of the persons involved in the disposition of individual cases.[12]

## II.

In addition to the orders and opinions, appellant also requested the Board to release "the reports, correspondence and data" in connection with Grumman's renegotiations for 1965. There is no suggestion that these are not "identifiable records" within the meaning of § 552(a) (3). In fact, the Chairman of the Renegotiation Board inspected the material in question and divided it into four categories:

A. Letters and documents exchanged by Grumman and the Board;

B. Inter-departmental and inter-agency communications between the Board and other government agencies with respect to Grumman's performance on its renegotiable contracts;

C. Communications between the Board and a firm holding a renegotiable contract, concerning Grumman's performance as a subcontractor; and

D. Intra-agency memoranda and communications consisting of advisory opinions, conclusions, recommendations, and analyses prepared by personnel and members of the Board.[13]

The parties agree that the documents in category (A) are available for inspection; appellant also states that it does not seek access to the advisory memoranda encompassed by category (D). Thus the parties appear in an adversary posture only as to the "performance reports" in categories (B) and (C).

---

of the Board's determinations are by order without opinion. In order to achieve the statutory purpose of disclosing agency action while concealing personal identity, the Board must be allowed to delete identifying details from its orders. Moreover, this protects the Congressional determination that there be two methods of renegotiation, voluntary "agreements" (orders) and unilateral Board determinations (orders with opinions), by giving the same anonymity to all orders as is given to opinions.

9. 5 U.S.C. § 552(a) (2) (Supp. IV, 1969); 32 C.F.R. § 1480.5(c) (1969).

10. The Act requires that "the justification for the deletion shall be explained fully in writing." 5 U.S.C. § 552(a) (2) (Supp. IV, 1969). *Cf.* 32 C.F.R. § 1480.5 (c) (2) (1969).

11. To preserve the anonymity of its records, the Board may, of course, refer to them by date or other code number in the index to its members' votes and opinions. 5 U.S.C. § 552(a) (2) (Supp. IV, 1969); 32 C.F.R. § 1480.5(d) (1969). A system of numerical identifications has previously been used to report on the Board's operations. See Comptroller General's Report on Coordination Between the Renegotiation Board and the Defense Department, BNA Fed.Contracts Rep.No.232 at D–1 (July 29, 1968).

12. *See* H.R.Rep.No.1497, *supra* note 4, at 8; S.Rep.No.813, *supra* note 6, at 7.

13. Appellant suggested that there might be a fifth category of documents, "investigatory or other factual reports prepared by Board employees," but appellee assured this court that any such items are included in categories (B) and (C).

■ Congress intended that § 522 would make available to the general public any agency records "which would routinely be disclosed to a private party through the discovery process in litigation with the agency."[14] In Boeing Airplane Co. v. Coggeshall,[15] we held that the Board's investigatory and other factual reports were subject to discovery. Hence, the documents being sought by appellant are clearly available to it under the Act unless they are exempted by subsection (b).

■ The Board contends that such immunity from disclosure is provided by Exemption (4)'s protection of confidential commercial and financial information. This provision has been interpreted to encompass only information received from persons outside the Government.[16] We concur in this reading of the statute.[17] The plain language of the exemption—it applies only to "information obtained from any *person*"[18]—is reenforced by the statutory history, which indicates that the exemption was not meant to allow agencies to render documents "confidential" by passing them back and forth among themselves.[19] On the other hand, information which is confidential in the hands of one agency retains its protected character in the hands of agencies to which it is subsequently furnished.[20] On remand, the District Court will have to determine, through *in camera* inspection,[21] whether the inter-departmental communications involved in this case come within this narrow category.[22]

■ This analysis does not apply, however, to the reports submitted by the prime contractor on Grumman's performance, since that material originated outside the Government. After examining those documents, the District Court must decide whether they contain commercial or financial information which the contractor would not reveal to the public and therefore are exempt from disclosure or are subject to release only after appropriate deletions have been made.

Reversed and remanded.

14. H.R.Rep.No.1497, *supra* note 4, at 10. Documents are available "if a court would 'routinely' order them produced in discovery proceedings," even though the agency might oppose production. Benson v. GSA, 289 F.Supp. 590, 595 (W.D.Wash. 1968), aff'd *sub nom.* GSA v. Benson, 415 F.2d 878 (9th Cir. 1969). While adopting "discovery" criteria as a gauge for availability, the Act removed the requirement that a party show "need" for a document; information is available equally "to any person." *See* Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 765–66 (1967).

15. 108 U.S.App.D.C. 106, 280 F.2d 654 (1960).

16. Benson v. GSA, *supra* note 14, 289 F. Supp. at 594; Consumers Union of United States, Inc. v. Veterans Admin., 301 F.Supp. 796, 803 (S.D.N.Y.1969). *Cf.* Davis, *supra* note 14, at 787–92.

17. *Cf.* Boeing, *supra* note 15, 108 U.S. App.D.C. at 113, 280 F.2d at 661.

18. The APA excludes government agencies from its definition of "persons." 5 U.S.C. § 551(2) (Supp. IV, 1969).

19. S.Rep.No.813, *supra* note 6, at 9; H.R. Rep.No.1497, *supra* note 4, at 10.

20. For example, the Board is empowered to inspect income tax returns, and its regulations require that data derived from that source not be revealed. 32 C.F.R. § 1480.-2(c) (1969).

21. *See* Ackerly v. Ley, 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969); GSA v. Benson, *supra* note 14.

22. The Board initially also relied on 5 U.S.C. § 552(b) (5) (Supp. IV, 1969) which protects agencies' internal policy memoranda, but it has since abandoned that contention.