**GRUMMAN AIRCRAFT ENGINEERING CORPORATION, Plaintiff,**

v.

**The RENEGOTIATION BOARD, Defendant.**

Civ. A. No. 1595–68.

United States District Court, District of Columbia.

April 26, 1971.

Tom Schaumberg, and Rexford Brown, Washington, D. C., for plaintiff.

Irwin Goldbloom, Dept. of Justice, for the Renegotiation Board.

## OPINION

CORCORAN, District Judge.

### I.

The Freedom of Information Act[1] requires the Government to make available to the public "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases."

In Grumman Aircraft Engineering Corporation v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578 (1970), the United States Court of Appeals for the District of Columbia held that under the Freedom of Information Act Grumman Aircraft Engineering Corporation (hereinafter "Grumman") was entitled to examine "final orders and opinions" of The Renegotiation Board (hereinafter the "Board") after suitable deletions by the Board to protect confidential information. The case was then remanded to this Court for a determination of whether certain documents sought to be examined by Grumman constituted final orders and opinions.

### II.

In its initial application to the Board, Grumman sought opinions and orders issued during the renegotiation of the contracts of fourteen competing companies during the years 1962 through 1965, as well as documents concerning its own renegotiations for the year 1965. Following the Court of Appeals decision, the Board furnished to Grumman copies of fifty-one so-called "clearance notices" and two so-called "unilateral orders" which the Board deemed to be the final orders and determinations with respect to the fourteen competitor corporations. Later the Board also furnished certain "performance reports" relating to Grumman and one "statement of facts and reasons" relating to one of the fourteen competing companies involved in renegotiations. Further, it amended its regulations in material respects to allow public access to certain of its records.[2]

In light of such action, taken subsequent to the Court of Appeals decision, the Board now asserts that it has fully complied with the mandate and urges that the issues are moot. Grumman, however, takes the position that there are additional documents involved in the renegotiation proceedings involving itself and the fourteen competitor companies which constitute final orders and opinions of the Board.[3] The Board

---

1. 5 U.S.C. § 552(a) (2) (A) (Supp. IV, 1969).

2. 36 Fed.Reg. 3808 (1971), *infra* at 1150.

3. The Grumman demand is detailed *infra* at 1151.

has moved for summary judgment. Grumman has moved for an order "in accordance with the mandate" of the Court of Appeals.

### III.

As an aid to the resolution of the issue of what constitutes a final order or opinion the Court granted Grumman permission to depose Mr. Lawrence E. Hartwig, Chairman of The Renegotiation Board, as to the procedures followed by the Board and the type of documentation which pertains to typical renegotiation cases. The gist of Mr. Hartwig's testimony concerning renegotiation procedures [4] follows.

(1) Renegotiation in all cases is initiated at the headquarters of the Board in Washington, D. C. The cases are separated into two categories, viz., Class A and Class B. A Class B case is one in which the renegotiable profits are less than $800,000. All others are Class A cases.

(2) When a case is filed with the Board it is first considered by the Office of Accounting to check sales, costs, and other accounting factors, and thereafter by the Office of Screening and Exemption. Those cases which appear not to involve excessive profits are screened out at headquarters through this procedure. All other cases are assigned to one of two Regional Boards usually, but not necessarily, on a geographic basis.

(3) A case assigned to a Regional Board is first handled by a two-man team made up of a renegotiator and an accountant. The accountant develops the financial information; the renegotiator develops information concerning contract performance and any other facts which may be of value in arriving at a determination. The team meets with and discusses the case with the contractor and others. When the team has compiled all the necessary information it prepares a Report of Renegotiation which consists of Part 1 (a) dealing with the accounting aspects, and Part 2 dealing with the renegotiator's evaluation and recommendation.

(4) The team report is then submitted to the Regional Board.

(a) In a Class B case the Regional Board, acting under power delegated to it by the Board, either issues a clearance notice or issues a unilateral order determining excessive profits. In the latter case an appeal by an aggrieved contractor lies to the Board in Washington.

(b) In a Class A case at regional level renegotiators recommend to the Regional Board either that clearance issue or that a refund be ordered. The Regional Board, in turn, makes a report and recommendation and transmits the file and report to the Board in Washington which has reserved to itself the authority to handle Class A cases.

(5) In a Class A case in which a Regional Board has recommended a clearance, the file after reaching Washington is first sent to the Office of Accounting which prepares a memorandum addressed to the Office of Review. In that memorandum the accounting office comments upon the financial report submitted by the regional accountant and indicates whether or not it agrees with the opinion of the accountant at the regional level. The Office of Review in turn assigns a reviewer who indicates his concurrence or disagreement with the recommendation of the Regional Board, and then the Director of the Office of Review indicates his own agreement or disagreement with the Regional Board's conclusions.

The file containing the various staff recommendations is then circulated among the five members of the Board. Any member may, if he wishes, conduct an independent study. Finally, according to Mr. Hartwig, "[W]hen

---

4. This general description of procedures paraphrases detailed regulations in 32 C.F.R. §§ 1471–1475.

the recommended clearance of the Regional Board comes up on the Board agenda, the Board simply approves or disapproves the clearance. It does not adopt any of the memoranda that are before it." (Tr. at 7) [5]

In the unusual case, however, where the Board has serious questions about the Regional Board's recommendation of clearance, the Board will reassign the case to headquarters and appoint a division of its own members to meet with the contractor and investigate the case further. Once the division is satisfied that a clearance is appropriate, it prepares a report to the Board to this effect. If the Board agrees, it issues a clearance after reassignment notice.

(6) There are two other types of cases which come to Washington after regional consideration, namely (a) a Class B case where a unilateral order determining excessive profits has been issued and the contractor has indicated an appeal, and (b) a Class A case where an excessive profits determination has been recommended by the Regional Office.

In such cases the Board appoints a division of its members to meet with the contractor and prepare a report to the full Board setting forth its analysis and recommendation. The case is then put on the agenda for consideration by the whole Board and ultimately is disposed of by the issuance of a clearance notice or the issuance of a unilateral order of determination of excessive profits. The minutes of the Board do not reflect any discussion or argument—they simply reflect the ultimate disposition of the case.

(7) 50 U.S.C. App. § 1215 provides in part:

"Whenever the Board makes a determination with respect to the amount of excessive profits, and such determination is made by order, it shall, at the request of the contractor or subcontractor, as the case may be, prepare and furnish such contractor or subcontractor, with a statement of such determination, of the facts used as a basis therefor, and of its reasons for such determination."

This statutory provision is implemented by 32 C.F.R. 1477.2 and 1477.3.

32 C.F.R. 1477.2 involves the case in which an order has issued, and the language of the regulation simply tracks the language of the statute.

32 C.F.R. 1477.3 governs a case in which an order has not issued and it provides in part:

"When a Regional Board has made a final determination in a Class B case or a final recommendation in a Class A case, or when the Board has made a final determination, and the contractor is unable to decide whether to enter into an agreement for the refund of excessive profits so determined or recommended, the Regional Board or the Board, as the case may be, will furnish the contractor a written summary of the facts and reasons upon which such final determination or recommendation is based in order to assist the contractor in determining whether or not it will enter into an agreement;"

The statement of facts and reasons and summaries of facts and reasons called for by the foregoing are prepared in draft form by the Board's staff and are circulated to each Board member to make whatever changes he wishes before they are finalized. Both are fresh documents in that the various memoranda in the case files are not simply summarized.

It is important to note that in no case does the Board formally adopt reports or recommendations of either the Regional Boards or its staff. It studies and considers but it does not adopt. Mr. Hartwig stated the reasons for this aspect of the Board's procedures:

"As a practical matter, * * * the Board would never get the job done

---

5. Tr. references are to the Hartwig deposition.

as expeditiously as Congress intended for it to be done, if a Board agreement had to be secured with respect to every report which is submitted to it. Another reason that the Board operates this way is that this is a judgemental type of operation where Board members may disagree with each other respecting the evaluation of a particular statutory factor; but, nevertheless, can agree on the decision. Frequently it happens in Board discussions that one Board member will emphasize one factor more than another. Or, I know of instances where, upon review of a proposed clearance, an individual Board member might criticize the report of renegotiation because it omitted something. He may even question whether the recommendation incorporated in that report is sufficiently supported in the report itself.

"But when he makes an independent examination of the file he may find, for example, a performance report which convinces him that the recommended clearance is appropriate, even though the particular renegotiator may not have commented favorably on the contractor's performance. This will simply illustrate how these cases come before the Board.

"There may be a case where one Board member will consider that the clearances are justified, clearance is justified, in his own mind, because the overall costs are reasonable. Another Board member might not be impressed by that point, he may consider that perhaps the overall costs are not low costs, but simply reasonable costs, but be more impressed by the contribution to the defense effort than his colleague. Nevertheless, despite the differences in evaluation, they can agree on the result." [Tr. at 150–151]

## IV.

As noted above, subsequent to the decision of the Court of Appeals, and while this matter was pending before this Court, the Board, under date of February 24, 1971, amended its regulation 32 C.F.R. § 1480.5 to provide as follows:

"(a) *Records available for inspection.* Pursuant to 5 U.S.C. 552(a) (2), the Board will make available for public inspection and copying, the following records:

(1) Agreements determining excessive profits.

(2) Orders determining excessive profits.

(3) Statements of facts and reasons issued by the Board.

(4) Letters not to proceed.

(5) Clearances after assignment.

(6) Clearances without assignment (express Board Action).

(7) Clearances without assignment (pursuant to delegation of authority).

(8) Decisions on applications for commercial exemption.

(9) Decisions on new durable productive equipment exemption.

(10) Decisions on applications for stock item exemption.

(11) Special accounting agreements.

(12) Interpretations.

(13) General Orders that affect the public.

(14) Administrative Orders that affect the public.

"Without regard to the provisions of 5 U.S.C. Section 552(a) (2), the Board will also make available for public inspection and copying summaries of facts and reasons issued by the Board." 36 Fed.Reg. 3808 (1971).

So,

(1) the Court of Appeals having determined that a statement of facts and reasons is a final order (as amended 32 C.F.R. 1480.5(1) (a) (3) now provides); and

(2) the Board having made available to Grumman certain performance reports and unilateral orders; and

(3) the Board having made provision in 32 C.F.R. 1480.5(1) (a) for the

production of summaries of facts and reasons "without regard to the provisions of 5 U.S.C. Sec. 552 (a)"

the Board now alleges full compliance with the mandate of the Court of Appeals and the provisions of the Freedom of Information Act.

But Grumman insists that final opinions and orders of the Board embrace at least the following:

"(1) Any 'Statement of Facts and Reasons' furnished pursuant to 32 C.F.R. § 1477.2 and Section 105(a) of the Renegotiation Act of 1951 (50 U.S.C. App. § 1215 (a)).

"(2) Any 'Summary of Facts and Reasons' prepared pursuant to 32 C.F.R. § 1477.3 when no 'Statement of Facts and Reasons' was subsequently furnished.

"(3) Any report and 'recommendation' prepared by a division of The Renegotiation Board pursuant to 32 C.F.R. § 1472.4(d) which does not result in a clearance and when no 'Statement of Facts and Reasons' or 'Summary of Facts and Reasons' was subsequently furnished.

"(4) Any 'report' prepared by a Regional Board pursuant to 32 C.F.R. § 1473.3(a) which results in a clearance.

"(5) Any report and 'recommendation' prepared by a division of The Renegotiation Board pursuant to 32 C.F.R. § 1472.4(d) which results in a clearance.

"(6) Any concurring or dissenting document prepared with respect to (1) through (5) above."

## V.

We discuss each of the Grumman claims below.

### (1) Statement of Facts and Reasons

The Court of Appeals specifically declared that such documents were final opinions of the Board and subject to disclosure under the Freedom of Information Act. Grumman Aircraft Engineering Corp. v. Renegotiation Board, *supra*, 425 F.2d at 579 n. 2. Accordingly, we need not discuss it further.

### (2) Summary of Facts and Reasons

A summary of facts and reasons is furnished when a final determination of excessive profits has been made by the Board (or a Regional Board) and the contractor is unable to decide whether to enter into agreement for a refund. If the contractor refuses to enter into such an agreement a unilateral order determining excessive profits is issued.

In its amended regulation 32 C.F.R. 1480.5 (*supra*) the Board made these summaries available to the public without, however, conceding the compulsion of the Freedom of Information Act. The Board takes the position that the unilateral orders issued in the pertinent cases, and not summaries of facts and reasons furnished pursuant to 32 C.F.R. 1477.3, are the final opinions and orders of the Board.

It is to be noted that 32 C.F.R. § 1477.3 used the word "final" in at least four places in describing the procedures for providing the contractor with a summary of facts and reasons, i. e.

"When a Regional Board has made a *final* determination in a Class B case or a *final* recommendation in a Class A case, or when the Board has made a *final* determination, * * *. the Regional Board or the Board * * *. will furnish the contractor a written summary of the facts and reasons upon which such *final* determination or recommendation is based * * *" [emphasis supplied]

Further, it is to be noted that 32 C.F.R. 1477.4 which enumerates the items to be included "in every statement or summary furnished" makes no distinction between the two types of documents. It follows that if statements of facts and reasons are final opinions (and the Court of Appeals has so held) then clearly sum-

maries of facts and reasons are also final opinions. To claim otherwise would fly in the face of the language of the regulations and the practical effect of the documents.

Chairman Hartwig said that the summary of facts and reasons "constitutes the Board's exposition of the case" but he maintained that it was not a final exposition because it was subject to change. (Tr. at 110) The Chairman's position, however, is unrealistic. Changes occur only in a "small minority of cases" (Tr. at 182) and in those the changed summary would logically become the final opinion.

Clearly a summary of facts and reasons expresses the Board's conclusions as to why and in what manner the contractor realized excessive profits. A unilateral order without a summary of facts and reasons would be meaningless and useless. It would tell nothing to a contractor and the public.

■ Accordingly, the Court holds that a summary of facts and reasons is a final opinion of the Board and available to the public under the Freedom of Information Act without reservation in all cases in which neither a statement of facts and reasons nor a modified summary is subsequently issued. In those few cases where the summary of facts and reasons is changed, the modified summary constitutes the final opinion of the Board and must be made available to the public.

### (3) *Division Report and Recommendation—Excessive Profits Determination*

Once a Regional Board has recommended a determination of excessive profits in a Class A case, the Board designates a division of its members to consider the case. After studying the various memoranda, the division files with the whole Board its report and recommendation which includes a con-

sideration of the statutory factors laid out in 32 C.F.R. § 1460.9–1469.14. 32 C.F.R. § 1472.4(d).

If one of the division's members disagrees with the report and recommendation he may file a dissenting memorandum. The report and recommendation, as well as the dissent, is then discussed by the full Board and if the Board agrees with the division a unilateral order of excessive profits is issued.

During his deposition Chairman Hartwig, in discussing this type of case, claimed that only the recommendation of the division but not its report was approved by the Board and that each member had his own reasons for the final action taken by the full Board, i. e., he claims the unilateral order is the Board's final exposition.

However, it appears to the Court that in this type of case the division report rather than the unilateral order is the crucial and final document. The report contains a consideration of the statutory factors, explains the reasons for the division's recommendation, and gives the facts on which that reasoning rests. This is the essence of a final opinion.

It is unrealistic to claim that because Board members might have different reasons for approval of the division's recommendation, the report of the division upon which its recommendation is based is not a final opinion. It is in fact the last document which explains reasons for the Board's decision. The report often reflects the views of a majority of the five Board members. But at the very least it reflects the analysis of one member and would thereby constitute a concurring opinion which under the Freedom of Information Act is included within the term final opinion.[6] If Board members have differing rationale for approval of the division's recommendation, they may state it in concurring opinions or memoranda.

---

6. The Freedom of Information Act specifically included "dissenting and concurring opinions" under its definition of "final opinion" so that "if one or more agency members dissent or concur, the public and the parties" will "have access to these views and ideas." S.Rep.No. 813, 89th Cong., 1st Sess. 7 (1965).

■ Accordingly, the Court concludes that where neither a statement of facts and reasons nor a summary of facts and reasons is issued, the report and recommendation of the division of the Board, together with any dissenting or concurring memoranda, constitutes the Board's final opinion and is available to the public under the Freedom of Information Act.

#### (4) *Clearance—Report of Regional Board*

When a case assigned to the Regional Board has been investigated and the Regional Board has submitted its report to the Board recommending clearance, the Board after considering all the information in the file either approves or disapproves. If it approves the recommendation the clearance notice is issued by the Regional Board.

This clearance is a decision of the Regional Board in a Class A case unless the Board is not in accord. The clearance notice is signed and issued by the Chairman of the Regional Board and states:

"This determination has been made by this Regional Board pursuant to the due delegation of authority and The Renegotiation Board has advised the Regional Board that it is in accord with this determination." 32 C.F.R. § 1498.6(a).

The notice further states that it

"shall constitute *final* action by the Government with respect to renegotiation pursuant to the Act for the fiscal year under review." [emphasis supplied] 32 C.F.R. § 1498.6(a).

Regional Board reports apply the statutory factors outlined in 32 C.F.R. §§ 1460.9–1460.14, are prepared and signed by a Regional Board member, and are signed on behalf of the Regional Board by its Chairman.

Such a report gives the facts and reasons for the Regional Board's recommendation and it is that recommendation which is approved by the Board. Here again a clearance notice by itself is meaningless. In order for the public to be fully informed, the reasons behind the clearance notice must be made available and in this type of case such facts and reasons are found in the Regional Board's report.

■ Accordingly, the Court concludes that a Regional Board report which results in a clearance notice constitutes the final opinion of the Board in a clearance case of this nature and must be made available to the public under the Freedom of Information Act.

#### (5) *Clearance—Division Report and Recommendation*

When the Board has reassigned a case to headquarters because it questions the Regional Board's recommendation for clearance, the Board appoints a division of its members to investigate the case and prepare a report for the Board. If the report recommends clearance and the Board agrees that it is appropriate, a clearance after reassignment notice is issued by the Board.

This procedure is similar to a determination by the Board that excessive profits have been realized. The reasoning of the Court applied to that situation, *supra,* applies equally well in this instance. The division report is prepared by a member of the Board. It is the final Board document which lays out reasons for the Board's actions.

It usually represents the reasons why at least a majority of the Board decided clearance should issue. If not specifically adopted by a majority of the Board, it at least represents one member's analysis of the issues and reasons for deciding that a clearance notice should issue and would be a concurring opinion.

■ Accordingly, the Court holds that a report and recommendation of a division which results in a clearance after reassignment notice constitutes a final opinion within the meaning of the Freedom of Information Act and must be made available to the public.

## VI.

■ To recapitulate, what the Court considers a final opinion is that document which states conclusions and reasons upon which the Board has acted as well as any dissents and concurrences thereto. Depending on the circumstances of any given case that document may be a summary of facts and reasons when no subsequent statement of facts and reasons is prepared; or it may be a report and recommendation of a division which does not result in a clearance and when neither a statement of facts and reasons, nor a summary of facts and reasons is prepared, or it may be the report of a Regional Board which results in a clearance, or it may be the report and recommendation of a division which results in a clearance. The essential factor is whether or not it represents the final conclusion and reasoning on which the final determination of the Board is based.

## VII.

There is a statutory exemption in the Freedom of Information Act which protects trade secrets and commercial or financial information obtained from a person which is privileged or confidential.[7] The Court of Appeals in Grumman v. Renegotiation Board, *supra,* at 581, discussed this exemption and noted that final orders and opinions should only be made available after confidential detail has been deleted. The holding of this Court as to what constitutes final opinions and orders in this particular instance must, of course, be read in the light of that statutory exemption.

## VIII.

Collateral to the issues in this case the Court's attention has been called to the fact that when the Board does make information public it does so through an indexing system which makes it extremely difficult for the public to locate and identify desired information. This Court does not claim any expertise in the matter of indexing, but it does suggest that in connection with information required to be made available, the Board should use its best efforts to make the information easily available through a simplified indexing system.[8]

Counsel for plaintiff will submit an appropriate order within ten days.

---

7. 5 U.S.C. § 552(b) (4) (Supp. IV, 1969).

8. Counsel for Grumman suggested the Standard Industrial Classification Code which the Board used previously in making information available to Congress.

See Joint Committee on Internal Revenue Taxation Report on The Renegotiation Act of 1951, H.R.Doc.No.332, 87th Cong., 2nd Sess. Appendix C, 81–97 (1962).