Peter J. PETKAS, Plaintiff,

v.

Elmer B. STAATS, Chairman Cost Accounting Standards Board, Defendant.

Civ. A. No. 2238-72.

United States District Court, District of Columbia.

Aug. 23, 1973.

On Plaintiffs Motion to Amend or Reconsider Sept. 28, 1973.

Ronald L. Plesser, Washington, D. C., for plaintiff.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., for defendant.

Eldon H. Crowell, Reavis, Pogue, Neal & Rose, Washington, D. C., for amicus curiae.

## MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

This action is brought under the Freedom of Information Act (the Act), 5 U.S.C. § 552 (1970). Plaintiff, an attorney associated with the Corporate Accountability Research Group, a public interest organization, seeks disclosure by the Cost-Accounting Standards Board (the Board) of certain Disclosure Statements (Statements) filed by Lockheed Aircraft Corporation, International Telephone and Telegraph Corporation and General Motors Corporation and their reporting subdivisions. The Board, pursuant to the Defense Production Act of 1950 as amended on August 15, 1970, 50 App.U.S.C. § 2168 and Part 351 of the Board's Regulations, 4 C.F.R. 351.2, et seq., requires corporations contracting in defense material with the United States to disclose the cost-accounting principles and procedures which they observe. Named as defendant was Elmer B. Staats, Chairman of the Board.

The plaintiff's request was denied at the Board level. While one Company—Lockheed—agreed to release certain limited parts of the answers included in the Statement, the plaintiff did not regard the profferred data as substantive and insisted upon full disclosure as to all. In denying the request the Board contended that when the Statements were filed by the companies they notified the Board that they contained trade secrets and commercial or financial information which was privileged and confidential. The defendant thus relies upon the fourth exemption of the Act.[1]

The defendant moved to dismiss the complaint or, in the alternative, requested the Court to grant summary judgment on the merits. The plaintiff cross-moved for summary judgment.

During the course of the proceedings the National Security Industrial Association, a trade association of industrial, research and educational organizations, and a spokesman for defense contractors, sought and obtained permission to file a memorandum as *amicus curiae*, supportive of non-disclosure. The memorandum was restricted to the issue whether the Statements of the companies were covered by the Fourth exemption.

The Court finds that the Disclosure Statements of the three companies should be excluded under the fourth exemption and grants summary judgment for the defendant.

In § 2168(g) of the Defense Production Act (1970) Congress established the Cost-Accounting Standards Board charged with the responsibility of promulgating cost-accounting principles to be followed by national defense contractors and subcontractors under certain Federal contracts. When promulgated, the standards are to be followed by such contractors in estimating, accumulating, and reporting costs in connection with the pricing, administration and settlement of all negotiated contracts. In § 2168(h)(1) of that Act the Board was empowered to promulgate regulations requiring contractors as a condition of contracting to disclose in writing the full detail of their cost-accounting principles, including methods of distinguishing direct costs from indirect costs and the basis for allocating indirect costs. Should the contractor fail to comply with promulgated standards or fail to adhere to his announced standards he would be subject to a contract price adjustment with interest for any increased costs paid to him by the government.

Pursuant to authority, the Board also promulgated a regulation of particular relevance which provides that if a contractor certifies that the Statement contains trade secrets and commercial or financial information which is privileged and confidential the Statement will be

---

1. 5 U.S.C. § 552(b)(4).

protected and not released to the public. 4 C.F.R. § 331.5.

The pertinent language of § 552 of the Freedom of Information Act provides:

"(3) . . . each agency, on request for identifiable records . . . shall make the records promptly available to any person . . .

\* \* \* \* \* \*

(b) This section does not apply to matters that are . . .

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential . . .."

■ As an initial argument the government asserts that the Board is an agency of the Congress and therefore, the provisions of the Act are inapplicable. The legislation creating the Board provides that "there is established, as an *agent* of the Congress, a Cost-Accounting Standards Board *which shall be independent of the executive departments* . . .." 50 App.U.S.C. § 2168(a). (Emphasis) Defendant then argues that § 551(1)(A), the subchapter on "definitions" of the Freedom of Information Act, specifically provides that an "agency" of the government does not include the Congress.

The Court rejects the argument as lacking in merit. While government counsel asserts this position, the Cost-Accounting Standards Board itself has pursued an opposite course. Indeed, the legislative history of the Defense Production Act of 1950 as amended, published regulations of the Board, 4 C.F.R. 303, citing the Freedom of Information Act as authority, the minutes of the Board and correspondence between the plaintiff and the Board, all a part of this record, indicate clearly that the Board is subject to the provisions of the Act. *See* Soucie v. David, 145 U.S.App. D.C. 144, 448 F.2d 1067 at 1073 (1971).

■ The decisions of our Court interpreting the Act demonstrate clearly that free access to and disclosure of public records are required. As stated in Getman v. National Labor Relations Board, 146 U.S.App.D.C. 209, 450 F.2d 670, 672 (1971), the Act is intended "to increase the citizen's access to government records. . . . The legislative plan creates a liberal disclosure requirement, limited only by specific exemptions which are to be narrowly construed. . . .." See also Soucie v. David, *supra*; Bristol-Myers v. Federal Trade Commission, 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970).

The Act in § 552(a)(3) requires that upon refusal by the government to supply the documents, ". . . the court shall determine the matter *de novo* and the burden is on the agency to sustain its action." § 552(a)(3). Accordingly, the Court conducted an *in camera* inspection of the Disclosure Statements of the three Companies.

The format of the Statements is that of a check list form on which the company notes in an appropriate box the accounting principle followed in a particular cost accounting procedure.

The Statements include eight sections: Part I—General Information; Part II—Direct Costs; Part III—Direct v. Indirect (costs); Part IV—Indirect Costs; Part V—Depreciation And Capitalization Practices; Part VI—Other Costs And Credits; Part VII—Deferred Compensation And Insurance Costs; Part VIII—Corporate Or Group Expenses. The form also provides for "continuation sheets" on which are described and detailed, where required, the particular accounting principle observed by the Company. Disclosure Statements supplemented by continuation sheets are required of a company for each of its reporting subdivisions—profit centers, thus allowing the Board to determine whether there is consistency in application of the cost-accounting principles. Once submitted to the Board, the company is bound by the system and practice disclosed. On basis of the Statements received from the defense contractors with the government the Board will then

have a fund of information from which standard accounting procedures will be promulgated for use in procurement processes.

With certain exceptions the Statement itself does not call for cost, pricing, sales or financial statistics nor does it request production, inventory and manufacturing data or customer lists. The exceptions are items 1.4.0 to 1.7.0 of Part I and item 8.1.0 and 8.2.0 of Part VIII, where the reporting company is required to disclose data on the absolute amount of its total sales—government and commercial—and the percentage of government sales to total sales. Aside from those items, however, the Statement does not require the disclosure of raw data which are commercial or financial in nature. Nor does the narrative contained in the continuation sheets reveal such.

■ To justify immunity from disclosure under § 552(b)(4) the government must demonstrate that the information is either a trade secret or commercial or financial, obtained from a person, and privileged or confidential. In application the Courts have construed the Section as to require that *all* of the prescribed elements must be present. Getman v. National Labor Relations Board, 146 U.S.App.D.C. 209, 450 F.2d 670 at 673 (1971), citing Consumers Union of the United States, Inc. v. Veterans Administration, 301 F.Supp. 796, 802 (S. D.N.Y.1969).

■ Neither the government nor the trade association argue strenuously that the materials included in the Disclosure Statements are trade secrets but rather they rely principally upon the remaining provision of the fourth exemption—particularly that the materials are financial or commercial and confidential.[2]

In determining the validity of the claim that the materials are commercial or financial the legislative history is instructive. The Senate Report[3] on the Freedom of Information Act on this subjection commented as follows:

"This exception is necessary to protect the confidentiality of information . . . which would customarily not be released to the public by the person from whom it was obtained. This would include business sales statistics, inventories, customers lists, and manufacturing processes."

The House Report[4] states:

". . . It exempts such material if it would not customarily be made public by the person from whom it was obtained by the Government. The exemption would include business sales statistics, inventories, customer lists, scientific or manufacturing processes or developments, and negotiation positions or requirements in the case of labor-management mediations."

In Sterling Drug, Inc. v. Federal Trade Commission, 146 U.S.App.D.C. 237, 450 F.2d 698 (1971) our Circuit Court denied access to records reflecting sales, costs, profits and market shares submitted to the Commission in another proceeding by a competing company. Plaintiff contends that the information sought cannot be considered as business sales statistics, inventories or customers lists and do not fall in any of the enumerated categories. While this is true the Statements do call for a full disclosure of the specific cost-accounting principles, practices and methods which are used by the companies as a contractual

---

2. The Government also contends that § 552(a)(3) of the Act prohibits release of information specifically exempted from disclosure by statute. They then refer to the Trade Secrets Act, 18 U.S.C. § 1905, a penal statute, which prohibits disclosure of information relating to trade secrets or financial data of a corporation. This contention, however, appears to be disposed of in Grumman Aircraft Engi-

neering Corporation v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578 at 580 n. 5 (1970).

3. S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965).

4. H.Rep.No.1497, 89th Cong., 2nd Sess. 10 (1966).

base line with the government. In come instances actual figures are supplied— but in any event the underlying formulae upon which the defense contractor submits his bids and cost estimates are revealed and they provide significant insight and analysis of a company's financial operations. These data as viewed by the Court are specialized, tailored particularly to the operations of the reporting company and are important and sensitive financial information.

A further question of confidentiality is presented by the government and the *amicus*. They contend that to release the Statements would place the companies at a competive disadvantage and would deter them from contracting with the Government. This assertion is not entirely groundless for if made available to the plaintiff they could likewise be made available to a business competitor.

The question of confidentiality is presented in another context. Following § 331.5 of 4 C.F.R. the contracts between the companies and the Board provided for the confidentiality of the Statements.[5] The Board obligated itself to refrain from disclosing the contents and the companies relied on that particular provision of their contract. An application of the principles of contract law would sustain this agreement between the parties. In this connection the House Reports, *supra* noted that ". . . where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations." And the Cost-Accounting Standards Board, after holding extensive hearings on the proposed regulations, considered ". . . that cost-accounting practices have never been made public, that companies have regarded and treated them as confidential, and that a company's competitive position would be damaged by public disclosure

of its cost-accounting principles." 37 Fed.Reg. 4139 (1972). Again *Sterling Drug* is instructive for the court there concluded, 450 F.2d at 709, that information "which would customarily not be released to the public by the person from whom it was obtained" was within the purview of subection (b)(4). This approach was also followed in Grumman Aircraft Engineering Corp. v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578 (1970) where at 582 the Court observed that "the District Court must decide whether (the documents) contained . . . information which the contractor would not reveal to the public and therefore are exempt from disclosure." See also Benson v. General Services Administration, 289 F.Supp. 590, 594 (W.D.Wash.1969), aff'd., 415 F.2d, 878, 881 (9th Cir. 1969).

After full consideration of the points and authorities of the parties on their cross-motions for summary judgment, the memorandum of the *amicus* and an *in camera* inspection of the documents submitted, the Court concludes that the Disclosure Statements fall within the provisions of the subsection (b)(4) exemption of the Freedom of Information Act.

Accordingly, it is this 23rd day of August, 1973,

Ordered that the defendant's motion for summary judgment be and the same is hereby granted; and further

Ordered that the plaintiff's motion for summary judgment be and the same is hereby denied.

## ON PLAINTIFF'S MOTION TO AMEND OR RECONSIDER

■ In accordance with Rule 52(b) and 60(b), F.R.Civ.P., the plaintiff has timely filed a motion requesting the Court to amend and to reconsider its Memorandum Opinion and Order of Au-

---

5. The relevant portion of the Regulation provides in § (a)(1):
"If the contractor has notified the Contracting Officer that the Disclosure Statement contains trade secrets and commercial or

financial information which is privileged and confidential, the Disclosure Statement will be protected and will not be released outside of the Government."

gust 23, 1973, and to direct the defendant to pursue the course suggested by the United States Court of Appeals for the District of Columbia, in a recently decided Freedom of Information Act opinion, Vaughn v. Rosen, 484 F.2d 820 1973.

At the time the Opinion and Order were entered in this proceeding while *Vaughn* had been decided, the Court did not consider that opinion. Having now considered that opinion together with a later companion decision, Cuneo v. Schlesinger, 484 F.2d 1086 (D.C.Cir. 1973), the Court sees no reason to disturb or set aside the August 23rd Memorandum Opinion and Order.

In *Vaughn*, Judge Wilkey in a very careful and lucid manner discusses the annoying problems of procedure and proof which are inherent in litigation involving the Freedom of Information Act which often confront the plaintiff and the Court. And very appropriately he prescribed certain procedures which hopefully might facilitate a resolution of the issues presented and assist the Court in arriving at a decision compatible with the purposes of the Act. Three procedures were suggested by Judge Wilkey for testing the classification of claims to exemptions: (1) the government should be required to provide particularized and specific justification for exemption consisting of a relatively detailed analysis of the material in question but which would not compromise the secret nature of the information; (2) a system of itemizing and indexing the material should be required that would correlate statements made in the government's refusal justification with the material in question; (3) the services of a special master might be utilized to review the material and assess the government's exemption claim.

The plaintiff in *Vaughn* sought from the United States Civil Service Commission evaluations assessing the personnel policies of certain federal agencies and recommendations and policies adopted by those agencies and the Commission. The government claimed that the reports were exempt from disclosure under three provisions of the Act. In support of their position an affidavit of the Director of the Bureau of Personnel Management Evaluation was submitted which set forth in bare and conclusory terms that the evaluations were exempt from disclosure. The affidavit shed little light on the contents of the information sought and left that plaintiff virtually uninformed as to the character and nature of the requested material.

Such is not the case in this proceeding. At the outset Mr. Petkas through his counsel was familiar with the form which solicited specific cost-accounting information from defense contractors through direct inquiries and he was, therefore, not confronted with the problem presented by *Vaughn*. Thus it does not appear that Mr. Petkas can justly contend that he was unable to characterize and categorize the cost-accounting information. In rendering an opinion this Court chose not to rely upon any representations of the government or upon a conclusory affidavit but rather undertook an *in camera* inspection of the material in question and arrived at an independent judgment as to the claimed exemption. Before the *in camera* submissions were received, a hearing was held to solicit the views of and to reach an accord on the material to be examined. Further, the Disclosure Statements which were subject to the Court's inspection were not diverse in character but rather were all of a similar nature and were subject to the same exemption. This presents a striking contrast to the facts as presented in *Vaughn*.

While the Court did not have the benefit of Judge Wilkey's guidelines when this proceeding was decided, *Vaughn* appears to be distinguishable. Nor can it be argued that the procedures prescribed therein must necessarily be applied in all Freedom of Information Act litigation. In reviewing the *in camera* submissions and in reaching a final determination the Court gave full consideration to all pleadings submitted and the oral argument of counsel. The motion of the plaintiff is denied.