Mimi CUTLER et al., Plaintiffs,

v.

CIVIL AERONAUTICS BOARD, Defendant.

Civ. A. No. 74-8.

United States District Court, District of Columbia.

April 3, 1974.

Larry P. Ellsworth, Ronald L. Plesser, Washington, D. C., for plaintiffs.

Paul M. Tschirhart, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

The Aviation Consumer Action Project (ACAP) and Mimi Cutler, a financial analyst for ACAP, brought this action under the Freedom of Information Act, 5 U.S.C. § 552, seeking to compel production by the Civil Aeronautics Board (CAB) of certain contingency plans for the cutback of airline services in the event that the available fuel supply is reduced by 15 percent from the November 1, 1973, allocation level. Defendant resists production on the ground that these documents fall within the third and fourth exemptions from the Act's requirement of disclosure. The matter is now before the Court on defendant's motion to dismiss or, in the alternative, for summary judgment, the plaintiffs' cross-motion for partial summary judgment as to the applicability of the third exemption, and the defendant's opposition thereto.

The contingency plans at issue were filed with the CAB by twenty air carriers at the Board's specific request. Shortly thereafter, plaintiffs sought access to the plans, but the CAB staff refused to comply on the ground that the plans were confidential. Plaintiffs appealed that refusal to the Board. Before the Board acted on the appeal, three of the carriers involved formally requested that their plans be kept confidential under 49 U.S.C. § 1504, which provides that:

The [Civil Aeronautics] Board or Administrator shall order [any document filed pursuant to this chapter] withheld from public disclosure when [any person has filed a written objection to such disclosure and], in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public.

When the Board failed to take any action on their appeal within the period provided under its regulations, plaintiffs proceeded to file this action on January 3, 1974. Five days later, the Board issued Order 74–1–54, barring public disclosure of any of the submitted plans. In so doing, it treated the three requests for confidentiality as inferentially expressing the desire of all of the carriers involved. On the following day, the Board informed plaintiffs of its Order and declined to produce any of the requested plans.

The Board relies primarily on the third exemption in the Freedom of Information Act, which provides that the Act does not require disclosure of "matters that are . . . specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The House Report on the Act indicates that there were in existence in 1967 nearly 100 federal statutes which would qualify under this exemption, but no effort was made to enumerate them.[1] The Board argues

---

1. H.R.Rep.No.1497, 89th Cong., 2d Sess. 10, U.S.Code Cong. & Admin.News, p. 2418 (1966). The emphasis that the parties and some courts have placed upon this comment in the House Report is unwarranted. In the first place, this Circuit has held that the Senate rather than the House Report is the authoritative interpretation of the Freedom of Information Act. Getman v. N.L.R.B., 146 U.S.App.D.C. 209, 450 F.2d 670, 673 n. 8 (1971). Moreover, attempts to track down the "nearly 100 statutes" in question have proved frustrating. The Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act (1967), at 31, indicated that Congress had been relying upon a 1962 survey by the Administrative Conference of the United States, but the Conference has since announced that no such survey was ever conducted. Memorandum to Staff Attorneys by John F. Cushman, Executive Director, Administrative Conference of the United States, March 15, 1974. Kenneth Culp Dav-

that section 1504 is such a statute, because it sets up an administrative procedure for regulating disclosure which arguably dispenses with the need for legislative regulation under the Freedom of Information Act.

■ The Board fails, however, to give sufficient meaning to the Act's requirement that documents be *specifically* exempted *by statute*. If these words are to have any meaning at all, they must require that the statutes in question either clearly identify some class of documents to be kept confidential or, at the very least, prescribe specific standards by which an administrative agency can determine the propriety of disclosure. Stretch v. Weinberger, 495 F.2d 639 (3d Cir. 1974); Dellums v. H. E. W., No. 181–72 (D.D.C. July 11, 1973).[2]

■ Section 1504 satisfies neither of these criteria. It does not require the CAB to withhold all documents submitted to it, nor does it give the Board guidance in determining which documents to disclose. Instead, it leaves the question of public access to the virtually unbridled discretion of the Board. By providing that requests for confidentiality may only be rejected upon a finding that disclosure is required "in the interest of the public," section 1504 does little more than formalize the procedure normally followed by all administrative agencies prior to the enactment of the Freedom of Information Act. Documents withheld under such a procedure are exempted from disclosure by the CAB, not by statute, and there is no in-

dication that Congress intended to sanction such broad discretion to impose secrecy in the face of its clear desire to increase public access to government information. *See* Environmental Protection Agency v. Mink, 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670, 672 (1971); Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1080 (1971).

■ On the other hand, it appears that some of the information contained in the contingency plans may constitute confidential commercial or financial information within the terms of the fourth exemption. 5 U.S.C. § 552(b)(4). However, the Court cannot accept the Board's conclusory assertion that all of the plans must be withheld in their entirety. The United States Court of Appeals for the District of Columbia Circuit has established a procedure for determining the applicability of the Act's exemptions, *see* Vaughn v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), and that procedure should be carried out promptly in this action.

Accordingly, the Board shall index the plans in question to indicate precisely which portions of which documents are privileged under the fourth exemption, specifying in a detailed, nonconclusory manner the reasons why each designated portion must be kept confidential. Opposing counsel should meet and attempt to reach agreement on as many of these

---

is has suggested that a Committee Print entitled Federal Statutes on the Availability of Information, House Committee on Government Operations, 86th Cong., 2d Sess. (1960), might prove to be a useful compilation, *see* K. Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 786 (1967), but at least one statute in that list has already been found insufficiently specific to fall within the third exemption. *See* Grumman Aircraft Engineering Corp. v. Renegotiation Bd., 138 U.S.App.D.C. 147, 425 F.2d 578, 580 n. 5 (1970). The difficulties inherent in this kind of speculation enforce the Court's conclusion that the third

exemption should be interpreted simply by construing *its terms*.

2. This reasoning may also have prompted the Court in Robertson v. Shaffer, C.A. No. 1970–71 (D.D.C.1972) to order, without opinion, the disclosure of various CAB documents in the face of § 1504. The Government is presently appealing that decision, but unless and until the Court of Appeals rules otherwise, this Court will apply the principles set forth in this Memorandum and apparently adopted in both *Robertson* and *Dellums*.

allegedly privileged portions as possible. To facilitate these negotiations, concealed portions should be described to plaintiffs with as much particularity as possible, consistent with the Board's perceived duty of confidentiality. Thereafter, the Board shall, by April 17, 1974, submit for the Court's *in camera* inspection all portions still in controversy, if any, along with the index indicating the precise reasons for refusing to disclose each portion. Plaintiffs shall respond by April 22, 1974, addressing their arguments to the specific portions indicated.

For the reasons and to the extent set forth in this Memorandum and Order, plaintiffs' motion for partial summary judgment is granted and defendant's motion to dismiss is denied. Defendant's motion for summary judgment is denied without prejudice to renewal after completion of the procedure described above.

So ordered.