**Clarence DITLOW and Ralph Nader**

v.

**John A. VOLPE, Secretary of Transportation, et al.**

**Civ. A. No. 2370–72.**

United States District Court,
District of Columbia.

June 12, 1973.

---

Ronald L. Plesser, Washington, D. C., for plaintiffs.

William H. Schweitzer, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

This is an action under the Freedom of Information Act, 5 U.S.C. § 552, presently before the Court on cross-motions for summary judgment. Plaintiffs seek public disclosure of certain records of the National Highway Traffic Safety Administration (NHTSA) which relate to investigation of safety defects in new automobiles. Plaintiffs seek (1) all correspondence between NHTSA and the investigated party (i.e. auto manufacturer) in connection with pending safety defect investigations, (2) Book D of the submission of General Motors Corpora-

tion to NHTSA of October 1970, and (3) a Report of NHTSA's Office of Standards Enforcement concerning the enforcibility of Federal Motor Vehicle Safety Standards. Items (2) and (3), Book D and the Report on standards enforcibility, were examined by the Court in camera. The various legal contentions will be considered ad seriatim.

I

Correspondence between NHTSA and Investigated Parties in connection with pending Defect Investigations.

Defendants rely upon three separate exemptions to support the contention that this correspondence is exempt from disclosure under the Freedom of Information Act. The first claim is based on exemption 3, 5 U.S.C. § 552(b)(3), which protects matters "specifically exempted from disclosure by statute." Section 112(e) of the National Highway and Traffic Safety Act, 15 U.S.C. § 1401(e), provides that

All information reported to or otherwise obtained by the Secretary . . . pursuant to [safety defect investigations] which information contains or relates to a trade secret or other matter referred to in Section 1905, of Title 18, shall be considered confidential for the purpose of that section. . . .

Section 1905 of Title 18 of the United States Code is the criminal provision authorizing punishment for disclosure "to any extent not authorized by law" by Federal employees of information obtained in the course of official duties concerning "trade secrets, processes, operations, style of work, or apparatus, or the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures" of any person.[1]

 The argument that Section 1905 is a blanket exception under exemption 3 of the Freedom of Information Act has been previously raised and rejected in this Circuit:

Unlike other statutes which specifically define the range of disclosable information, e.g. 26 U.S.C. § 6103 (1964), as amended (Supp. IV, 1969), Section 1905 merely creates a criminal sanction for the release of "confidential information." Since this type of information is already protected from disclosure under the Act by § 552(b) (4), Section 1905 should not be read to expand this exemption, especially because the Act requires that exemptions be narrowly construed. 5 U.S.C. § 552(c) (Supp. IV, 1969).

Grumman Aircraft Engineering Corp. v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578, 580 n. 5, (1970)[2]. The question arises whether specific reference to Section 1905 in the National Highway and Traffic Safety Act, supra, dictates a different result. Section 112(e), however, creates, confidentiality only "for the purpose of that section," i.e. Section 1905. Congress thus intended to allow confidentiality only as already provided for in Section 1905.

---

1. 18 U.S.C. § 1905:
 Disclosure of confidential information generally. Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to

the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000.00, or imprisoned not more than one year, or both; and shall be removed from office or employment.

2. See also M. A. Schapiro & Co. v. S.E.C., 339 F.Supp. 467, 469–470 (D.D.C. 1972).

There is no indication in the statute or the legislative history [3] of intent to create a special, broader confidentiality for auto safety information than that available under exemption 4 of the Freedom of Information Act. Section 112(e) thus harmonizes with exemption 4 in protecting trade secrets and privileged or confidential financial or commercial information. In this case, exemption 3 is co-extensive with exemption 4, which is claimed by the Defendants as a separate ground for nondisclosure.

▆▆▆ Exemption 4, 5 U.S.C. § 552(b)(4), exempts from disclosure trade secrets and privileged or confidential commercial or financial information. These are separate elements and

> this section exempts only (1) trade secrets and (2) information which is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential. The exemption

given by the Congress does not apply to information which does not satisfy the three requirements stated in the statute.

Getman v. N.L.R.B., 146 U.S.App.D.C. 209, 450 F.2d 670, 673 (1971) quoting Consumers Union of United States, Inc. v. Veterans Administration, 301 F.Supp. 796, 802 (S.D.N.Y.1969). Further, a bare claim or promise of confidentiality will not suffice [4] the materials sought must be "independently confidential" based on their contents,[5] i.e. not otherwise subject to public disclosure [6] and entitled to a reasonable expectation of privacy.[7]

Defendants contend that all of the correspondence with auto manufacturers is "quite clearly commercial." [8] Assuming, without deciding, that this broad contention is accurate, there still has been no showing that the "commercial" information in each item or set of corre-

3. The House, Senate, and Conference Reports all speak only in general terms of § 112(e) as designed to protect trade secrets. S.Rep.No.1301, 89th Cong. 2d Sess., June 23, 1966 at ——; H.Rep. No. 1776, 89th Cong. 2d Sess., July 28, 1966, at 27; Conference Report No. 1919, 89th Cong. 2d Sess., August 30, 1966; Statement of the Managers on the part of the House, 1966 U.S.Code Cong. and Adm.News, pp. 2731, 2736. Such protection for trade secrets was necessary at that time because the Freedom of Information Act was not yet law.

4. Bristol-Myers Company v. F.T.C., 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970). The mere promise of confidentiality by an agency cannot create an exemption from the statute under which the agency is required to disclose the information. Getman v. N.L.R.B., 146 U.S.App.D.C. 209, 450 F.2d 670, 673 (1971); Legal Aid Society v. Shultz, 349 F.Supp. 771, 776 (N.D.Cal.1972); cf. St. Regis Paper Company v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L. Ed.2d 240 (1961). Such an approach would enable the agency to render meaningless the statutory scheme. Defendants argument to the contrary is based on language of the House Report on the Act: "Moreover, where the Government has obligated itself in good faith not to disclose documentations or information which it receives, it should be able to honor such

obligations. H.R.Rep.No.1497, 89th. Cong. 2d Sess. 10 (1966). Yet the House Report, "is characteristically broader and goes beyond the express terms of the statute. . . . The Senate report is to be preferred over the House report as a reliable indication of legislative intent. . . . " Getman v. N.L.R.B., 146 U.S. App.D.C. 209, 450 F.2d 670, 673 (1971), cf. K. Davis, Administrative Law Treatise (1970 Supp.) §§ 3A.2, 3A.23. The Senate Report on this point protects only information "which would customarily not be released to the public by the person from whom it was obtained." Senate Report No. 813, 89th. Cong. 1st Sess. 9 (1965). Nor can the source of the information claim prejudice from breach of such a promise, for the source must also be held to be on notice of the agency's obligations under the law.

5. Fisher v. Renegotiation Board, 473 F.2d 109, 113 (D.C.Cir.1972), M. A. Schapiro & Co. v. S.E.C., 339 F.Supp. 467, 470–471 (D.D.C.1972).

6. Id. at 113, n. 4.

7. Getman v. N.L.R.B., 146 U.S.App.D.C. 209, 450 F.2d 670, 674 (1971), Bristol-Myers Co. v. F.T.C., 424 F.2d 935, at 938, Grumman Aircraft Engineering Corp. v. Renegotiation Board, 138 U.S. App.D.C. 147, 425 F.2d 578, 580 (1970).

8. Defendants' Brief at 10.

spondence is independently confidential. Defendants have not come forward with a specific explanation of the confidential nature of the correspondence, nor even attempted to do so in the most general terms.[9]

▆ The exemption on which Defendants primarily rely with regard to correspondence in the open investigative files is exemption 7, for "investigatory files compiled for law enforcement purposes . . ." 5 U.S.C. § 552(b)(7). There is no dispute that correspondence with the investigated party is placed by NHTSA in its open "investigative" file. Yet "the policy of the Act requires that the disclosure requirement be construed broadly, the exemption narrowly"[10] and the investigatory "label" applied by the agency is not controlling.[11] While the open files here involved could conceivably lead to a civil enforcement proceeding,[12] the agency has not made the required showing "that disclosure of the files sought is likely to create a concrete prospect of serious harm to its law enforcement efficiency." Weisberg v. Department of Justice, No. 71–1026 (D. C.Cir., Feb. 28, 1973), Slip Opinion at 8. Although labelled "investigative", the correspondence here sought is correspondence between the agency and the auto manufacturer being investigated. There are no apparent problems with confidential sources, premature relevation of sus-

pects and the like. And most certainly in the present case there is no problem about discovery of the information by the subject of the investigation,[13] since the auto manufacturer is either the recipient or the source of all the correspondence here sought. "Disclosure of materials already in the hands of potential parties to law enforcement proceedings can in no way be said to interfere with an agency's legitimate law enforcement functions and, therefore, such material is not within the exception of § 552(b)(7)."[14] The "investigative files" exemption is therefore unavailable here for correspondence between the agency and the investigated party.

## II

Book D of the submission of General Motors Corporation to NHTSA.

Book D is one volume of a six volume submission (Books A–F) made by the General Motors Corporation (GM) on October 1, 1970, in connection with the now terminated defect investigation of heaters in Corvair automobiles. Books A, B, C, E and F of that submission have been made public. Book D contains materials relating to open lawsuits involving GM. A portion of the book containing pleadings and related documents has been disclosed, with the consent of GM.

Defendants describe the portion of Book D withheld as consisting of "mem-

---

9. The blanket claim of confidentiality of all correspondence is further belied by the fact that the entire investigative file, including correspondence, is made publicly available when the investigation is closed. There are exceptions to this general practice, but as to each item withheld in such an exception there must be a showing that the materials withheld independently qualify for exemption from the disclosure requirements of the Act. See II below.

10. Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1080 (1971).

11. Bristol-Myers Co. v. F.T.C., 138 U.S. App.D.C. 22, 424 F.2d 935 (1970). Weisberg v. Department of Justice, No. 71–1026 (D.C.Cir. February 28, 1973), Slip Opinion at 10.

12. 15 U.S.C. § 1398(a). The present record reveals nothing from which the Court

can determine "whether the prospect of enforcement proceedings is concrete enough to bring into operation the exemption for investigatory files. . . ." Bristol-Myers Co. v. F.T.C., 138 U.S.App. D.C. 22, 424 F.2d 935, 939 (1970).

13. This was clearly the concern of the Committee Reports on the Act: "[D]isclosure of such files . . . could harm the Government's case in Court." S.Rep.No.813, 89th. Cong. 1st. Sess., at 9 (1965); see also H.Rep.No. 1497, 89th. Cong. 2d Sess. at 11 (1966).

14. Legal Aid Society of Alameda County v. Shultz, 319 F.Supp. 771 (N.D.Cal. 1972), quoting Wellford v. Hardin, 315 F.Supp. 175, 178 (D.Md.1970), aff'd 444 F.2d 21 (4th Cir. 1971).

oranda containing statements of General Motors legal position" relating to open lawsuits "and factual information developed . . . in preparation for trial." [15] Upon this description the Court expected that Book D contained substantive legal memoranda and investigative reports. In fact, in camera review reveals that Book D now consists of six (6) pages, each page containing a brief one paragraph description of a lawsuit. The paragraph consists of a statement that the lawsuit is contested, its procedural status, a succinct statement of the allegations of the Complaint, and a statement of "General Motors' Position In the Lawsuit." In each case, General Motors' position is to deny liability. The "factual information" contained in five of the statements is a cryptic exculpatory report, such as "General Motors' engineers found no basis for the Plaintiff's allegations." [16]

This is a case where lawyer's verbiage has transformed six insignificant paragraphs into a major bone of contention. The only thing more puzzling than why Plaintiffs would want these documents is why Defendants refuse to disclose them. Of course, Plaintiffs had no certain knowledge of the contents and doubtless were incited by the great efforts expended by the Government to prevent disclosure. To this Court the struggle over Book D seems a monumental waste of effort by all concerned, apparently motivated by GM's "request" that the documents remain confidential. Yet the agency must know by now that it cannot withhold by fiat that which the law requires be disclosed.[17]

Defendants claim that two statutory exemptions from disclosure are available for Book D: exemption 4, 5 U.S.C. § 552(b)(4), for privileged or confidential commercial or financial in-

formation, and exemption 7, 5 U.S.C. § 552(b)(7), for investigative files. Both of these exemptions, however, require specific showings as to each item: for exemption 4 that the item is independently confidential,[18] or for exemption 7 that disclosure would prejudice law enforcement activity.[19] Defendants have not even attempted such a showing as to exemption 7. As to exemption 4 Defendants have contended that the memoranda contain "privileged information which the Company was not required to submit to NHTSA."[20] Yet this Court is unable to discern anything in the six paragraphs which could be subject to a claim of privilege. The allegations of the Complaint, status of the case, and defense position would all be revealed in the pleadings of a case. Engineers' report would be subject to discovery, remembering that the only elements of such reports present here are unelaborated conclusions. Further, Defendants position implies, though it does not expressly state, that this information was gratuitously furnished by GM in exchange for a promise of confidentiality, that GM could not be required to submit it to NHTSA. Yet the National Highway and Traffic Safety Act of 1966, 15 U.S.C. § 1381 et seq., grants the Secretary of Transportation ample authority to require submission to NHTSA of any information at all relevant to safety defect investigations. 15 U.S.C. § 1401. In sum, Defendants have failed to sustain their burden of demonstrating the independent confidentiality of the materials contained in Book D.

### III

Report of the Office of Standards Enforcement concerning enforcibility of Federal Motor Vehicle Safety Standards.

---

15. Carter affidavit ¶ 15.

16. This is not a direct quote but a paraphrase so as to protect Defendants' right to appeal. The actual language is equally uninformative.

17. See notes 4–7 and accompanying text, supra.

18. Fisher v. Renegotiation Board, 473 F.2d 109, 113 (D.C.Cir.1972).

19. Weisberg v. Department of Justice, No. 71–1026 (D.C.Cir. February 28, 1973). See notes 12–14, supra.

20. Carter affidavit, ¶ 15.

Defendants claim that this report comes within exemption 5 of the Act, 5 U.S.C. § 552(b)(5), for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Defendants' supporting affidavit characterizes the report as follows:

> The document in question consists of a bound annotated volume of NHTSA safety standards, compiled in 1969, containing comments and suggestions with respect to specific standards which appear on the pages opposite the footnoted texts to which they apply. The annotations . . . are limited to opinions, advice and recommendations, and contain no factual passages. They consist solely of suggestions for improvements, clarifications, and other revisions in the texts of the standards.[21]

Plaintiffs dispute the above characterization. They contend that the report contains "factual analysis of professional engineers as to the enforceability of certain particular standards," that is "not the result of mutual consultation and debate on a proposed decision of the agency, [but] the evaluation of professional engineers after that decision had been reached, i.e., the promulgation of the initial regulation."[22]

■ Plaintiffs rely on Tennessean Newspapers, Inc. v. F.H.A., 464 F.2d 657, 660 (6th Cir. 1972)[23] which held that the finished work product of a professional, an "analysis of facts involving a professional opinion" was not exempt under exemption 5 where it was not shown to have been involved in a policy making process. The item there disputed was a real estate appraisal. Such an appraisal would obviously have been an ingredient in an F.H.A. decision to insure a mortgage on the property in question. Although the Court did not expressly state the point, it is clear that the professional "opinion" was viewed as essentially a factual element in that decision-making context, and was not considered to be the type of policy-oriented commentary to be protected by the exemption. Bristol-Myers Co. v. F.T.C., 138 U.S.App.D.C. 22, 424 F.2d 935, 939 (1970) used the same approach to exemption 5 in distinguishing between matters which were purely factual reports or scientific studies and those internal working papers in which opinions are expressed and policies formulated. This Court agrees that expression of a professional opinion as to an established fact or past event, such as the appraised value of real estate or the engineering enforcibility of a safety standard already promulgated, does not necessarily contain policy-making elements or comments.[24] It is only where commentary or policy analysis is also involved, as e.g. in suggestions for modification of standards, that Congressional concern for a full and frank exchange of views within the agency comes into play.

■ Examination of the Report here in question has revealed that Defendants' characterization is accurate in this instance. The report consists only of recommendations for revision in existing standards. The recommendations are not elaborated with supporting factual data. The recommendations would undoubtedly be the subject of debate on a proposed decision of the agency, i.e. the decision whether to revise the standards accordingly. The Report is thus properly exempt from disclosure as an internal agency memorandum.

21. Carter affidavit, ¶ 16.

22. Plaintiffs' Brief at 5, 18.

23. Accord, Philadelphia Newspapers, Inc. v. Department of H. & U. D., 343 F.Supp. 1176 (E.D.Pa.1972).

24. Cf. Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1078 (1971), Verrazzano Trading Corp. v. United States, 349 F.Supp. 1401, 1406–07 (U. S. Customs Court 1972). Compare Wu v. National Endowment for Humanities, 460 F.2d 1030, 1033 (5th Cir. 1972) where the "expert evaluations" were entirely opinions and recommendations.