**MOBIL OIL CORPORATION, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants.**

No. 74 Civ. 311.

United States District Court,
S. D. New York.

Jan. 12, 1976.

Donovan, Leisure, Newton & Irvine, New York City, for plaintiff; Andrew J. Kilcarr, Washington, D. C., Charles F. Rice, New York City, Mobil Oil Corp., of counsel.

Thomas J. Cahill, U. S. Atty., S. D. N. Y., New York City, for defendants; Gregory J. Potter, Asst. U. S. Atty., Calvin J. Collier, Gen. Counsel, Gerald Harwood, Asst. Gen. Counsel, Robert E. Duncan, Mary L. Azcuenaga, Attys., F. T. C., of counsel.

LASKER, District Judge.

By letter dated August 22, 1973, Mobil Oil Corporation requested, pursuant to the Freedom of Information Act (FOIA) the opportunity to inspect and copy all communications pertaining to various aspects of petroleum use[1] from January 1, 1970 to August 22, 1973 between the Federal Trade Commission (FTC—Commission) and (1) Congress, (2) any federal agency, and (3) any state government or

agency. On December 12, 1973, the FTC granted the request in part and denied it in part.

Specifically, the FTC granted access to correspondence between the Commission and Congress, and between the Commission and state governments and agencies, except for the portions of the documents which contained identifying details and names of the persons who communicated with government officials. The FTC also refused to disclose staff opinions or theory, and communications between the Commission and other federal agencies.

Mobil then filed this suit under the FOIA to compel disclosure of all withheld information. Subsequently, on March 6, 1974, the FTC informed Mobil that certain of the communications between the FTC and the states are part of active investigatory files or contained privileged or confidential material, and, as such, were exempt from disclosure.[2]

I.

*Deletion of Names and Identifying Details in Communications Between the FTC and Congress and the FTC and State Agencies*

The first category of materials in dispute are letters and other documents

---

1. Mobil specifically requested:

 [F]or the period January 1, 1970 to [August 22, 1973], all communications including letters, reports or memoranda, and notes, transcripts or other memorialization of oral communications pertaining to petroleum (in liquid or gaseous form) supplies, shortages, allocations, imbalances, availabilities, competitive or noncompetitive activities, and any reason therefor or causes thereof, between the Federal Trade Commission (including any member or employee thereof) and

 A. any member of the Congress, including any employee of the Congress or any member thereof;

 B. any agency of the United States Government; or employee thereof;

 C. any State government or any agency or employee thereof.

2. By memorandum dated June 27, 1974, the government's original motion to dismiss or for summary judgment was denied and the FTC was directed to (1) search for the existence of

any relevant tape recordings and (2) file affidavits sworn on personal knowledge of the several department heads who actually supervised the search for the documents requested by Mobil. On September 9, 1974, the office of the U. S. Attorney advised counsel for plaintiff that the search for the documents was complete and that those documents which were not claimed to be exempt from disclosure were available for inspection. On September 26, 1974, the FTC filed the documents with the court for *in camera* review and 98 affidavits concerning the thoroughness of the search for relevant documents and tape recordings. On the basis of these documents, we are convinced, and there is no dispute, that the FTC has conducted a comprehensive search for the requested material and that there are no electronic recordings which concern the subject matter of Mobil's request. See *National Cable Television Association, Inc. v. FCC,* 156 U.S. App.D.C. 91, 479 F.2d 183, 190–193 (1973); *Bristol-Myers v. FTC,* 138 U.S.App.D.C. 22, 424 F.2d 935 (1970).

which constitute communications between the FTC and Congress, and the FTC and state agencies. Although the Commission released these documents to Mobil, it did so only after blacking out virtually all identifying details including the names of the correspondents. Charles A. Tobin, Secretary of the FTC, justified these deletions by stating that:

> "The Commission will not release such identifying information because it believes . . . that Citizens have a right to communicate with their government without fear of unwarranted public disclosure." (Letter of December 12, 1975 to Andrew Kilcarr, Ex. E to complaint)

The FTC has adhered to this position, which it defends on the basis of what it terms an "informer's privilege" that it asserts is implicit in Exemptions 3, 4 and 7 of the FOIA, 5 U.S.C. § 552(b)(3), (4) and (7).

■ At the outset we reject the agency's argument that the purposes of these three specific provisions of the FOIA may be fused to create by implication an exemption not explicitly stated in the statutory language. As recently as April of this year, the Supreme Court in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975) reconfirmed the principal objective of the FOIA which is:

> " 'to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' S.Rep.No. 813, 89th Cong., 1st Sess., 3 (1965); *Environmental Protection Agency v. Mink* [410 U.S. 73], *supra,*, at 80, 93 S.Ct. [827], at 832 [35 L.Ed.2d 119] (1973)."

According to the language of the FOIA as construed by the Supreme Court, all "identifiable records" must be made available to a member of the public on demand (5 U.S.C. § 552(a)(3)) unless the requested documents fall within one of the Act's nine exemptions. (5 U.S.C. § 552(b)). *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 136–137, 95 S.Ct. 1504. Although the validity of the theory of an "implicit" exemption advanced by the FTC has not been squarely presented to any court, the general philosophy of the FIOA as stated by the court in *NLRB v. Sears, Roebuck & Co., supra,* the accepted principle that the specific exemptions are to be construed narrowly,[3] and the language of the Act itself make clear that the FTC's justification for deleting identifying details can be sustained, if at all, only on the *independent* applicability of any of the Act's exemptions to the deletions in question. Each exemption upon which the FTC relies must therefore be individually analyzed to determine whether, as defendants argue, it warrants the erasures made.

*A. Exemption 3*

■ The Commission relies first upon the argument that Section 6(f) of the Federal Trade Commission Act, 15 U.S.C. § 46(f) (FTCA), as well as certain of the FTC's rules and regulations, authorize the deletion of confidential matter and that these statutes and rules bring the material within Exemption 3 of the FOIA which protects matters that are

> "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3)

The Commission bases its authority to withhold identifying details in part on the strength of Rules 2.2(d) and 4.10(b) of the FTC's Rules of Practice. 16 C.F.R. §§ 2.2(d), 4.10(b). Section 2.2(d) states that the Commission's "general . . . policy" is not to divulge names of complainants "except as required by law." Section 4.10(a) recites the exemptions to the FOIA with the FTC's analysis of those exemptions, adding, at § 4.10(b), that the Commission may delete identifying details from material it

---

**3.** See, e. g., *Rose v. Department of Air Force,* 495 F.2d 261 (1974); *Fisher v. Renegotiation Board,* 153 U.S.App.D.C. 398, 473 F.2d 109, 112 (1972); *Bristol-Myers Co. v. FTC,* 138 U.S. App.D.C. 22, 424 F.2d 935, 938, *cert. denied,* 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970).

makes public if necessary "to prevent clearly unwarranted invasions of privacy." Rather than creating additional criteria for withholding information, these regulations restate—and in § 4.10(a) actually recite—the exemptions contained in the FOIA itself. Even if this were not so, however, neither regulations nor guidelines promulgated by a federal agency, can override the language and purpose of a statutory enactment. Exemption 3 permits a refusal to disclose material only where another *statute* authorizes such action.

Thus, the only possible basis for the applicability of Exemption 3 in the circumstances is Section 6(f) of the FTCA (15 U.S.C. § 46(f)) which provides in language the Commission argues to be relevant:

> "§ 46 Additional powers of Commission
>
> The Commission shall also have power—
>
> (f) *Publication of information; reports*
>
> To make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use."

The Commission argues that this language authorizes it to determine whether the release of information in its possession would further the public interest. If, as here, the FTC concludes that disclosure of particular documents would not achieve that goal, the agency contends that Section 6(f) prohibits the release of that material, and that it consequently falls within the ambit of Exemption 3 of the FOIA.

■ We disagree. Section 6(f) confers upon the FTC the right to disclose and publish, with few limitations, information it possesses. By its terms, the statute authorizes *disclosure*—not, as the FTC argues, the refusal to disclose. The sole items that the statute does not authorize the FTC to reveal are trade secrets and names of customers. Those limitations in no way make the statute one which explicitly forbids disclosure of all identifying details and all names of correspondence in communications received by the FTC.

The legislative history and judicial construction of Section 6(f) support this interpretation. The Senate debate on the bill which became § 6(f) demonstrates that although the statute embodies guidelines to limit release of certain types of information at the FTC's disposal, the major thrust of the bill was to set forth what material the Commission on its own initiative *could* make public, not what it could refuse to disclose. In fact, some concern was voiced on the Senate floor that the FTC under this statute would release too much information. See 51 Cong.Rec. 12929 (1914).[4] Similarly, the analysis of § 6(f) by the court in *FTC v. Cinderella Career and Finishing Schools*, 131 U.S.App.D.C. 331, 404 F.2d 1308 (1968) establishes that the section was aimed at allowing publication and

---

4. The Senate debate included the following interchange:

> Mr. SUTHERLAND. Again let me see if I understand the Senator. One of the powers given to this commission is to make public the facts that they may learn. Does the Senator think the commission may require the production of all books and papers, and so on, in order that what it discovers may be made public?
>
> Mr. LEWIS. No; I answer the Senator. He misapprehends the purport of the bill

completely if that is his idea. The matters made public in the bill relate only to those things that have been brought before the commission for one of two purposes, or aid to legislation, which would not be a matter which anyone could complain of, or to demonstrate a violation complained of as touching unfair competition. It does not allow, as I apprehend the bill, that matters may be made public without any regard to any object whatever except publicity. 51 Cong. Rec. 12929 (1914).

that the limitations on public release set forth in the section were intended to:

> "require adequate consideration and suitable weighing of any damage to private property which widespread publicity of unadjudicated charges may be calculated to produce." *Id.* at 1320–1321 (Robinson, III, J., concurring)

Accord, *Bristol-Myers Co. v. FTC,* 138 U.S.App.D.C. 22, 424 F.2d 935, 940 *cert. denied,* 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970).

Section 6(f) of the FTCA is thus distinguishable from other statutes which have been held to fall within the meaning of Exemption 3 of the FOIA. In *Evans v. Department of Transportation,* 446 F.2d 821 (5th Cir. 1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972), the statute at issue provided in part:

> "Any person may make written objection to the public disclosure of information . . . . Whenever such objection is made, the Board or Administration shall order such information withheld from public disclosure when, in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public." 49 U.S.C. § 1504

It is clear, and the government concedes, that 49 U.S.C. § 1504, unlike § 6(f) of the FTCA, contains an affirmative provision for exemption from disclosure. Similarly, the court in *California v. Richardson,* 351 F.Supp. 733 (N.D.Cal.1972), held that the withholding of records was protected by Exemption 3 of the FOIA on the basis of a statute which prohibits:

> " . . . disclosure . . . of any record . . . obtained . . . by the Secretary . . . or by any officer or employee of the Department of Health, Education and Welfare . . . except as the Secretary . . . may by regulations prescribe . . . ." 42 U.S.C. § 1306(a).

The unequivocal language of the statute at issue in *California v. Richardson, supra,* forbids disclosure of documents and is in general the converse of § 6(f) of the FTCA which authorizes release of material. In short, the statutes which have been held to fall within the exemption are the obverse of § 6(f) of the FTCA in language and intent; the cases interpreting them are not authority for the defendants' position.

The Supreme Court's recent analysis of Exemption 3 in *FAA Administrator v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975) did not specifically address the issue in this case and in no way undermines the result reached here. The *Robertson* court merely held that the term "specific" in Exemption 3's requirement that material be "specifically exempted . . . by statute" did not mean that:

> "the exemption applies only to documents specified, *i. e.,* by naming them precisely or by describing the category in which they fall." *Id.* at 265, 95 S.Ct. at 2147.

However, the inapplicability of Section 6(f) of the FTCA to Exemption 3 is not predicated on its lack of specificity, but rather on the fact that it simply is not a statute which purports to prohibit disclosure.

As indicated above, the sole area in which § 6(f) of the FTCA limits the authority of the Commission relates to disclosure of facts which consist of "trade secrets and names of customers." Thus, although § 6(f) cannot justify wholesale deletions of all names and identifying details, it does specifically exempt from disclosure those two items. Accordingly, deletions of trade secrets and names of customers, but only such deletions, are protected from disclosure by Exemption 3 of the FOIA.

### B. *Exemption 4*

The FTC next asserts that the informant's privilege is inherent in Exemption 4 of the FOIA which protects from disclosure:

> "trade secrets and commercial or financial information obtained from a

person and privileged or confidential."
5 U.S.C. § 552(b)(4)

An examination *in camera* of a sizeable sample of the documents in question confirms that in many instances they pertain to "trade secrets and commercial or financial information." However, it is impossible to determine on the record before us whether they are privileged or confidential.

As the court in *Bristol-Myers Co. v. FTC,* noted, "This provision serves the important function of protecting the privacy and the competitive position of the citizen who offers information to assist government policy makers." 424 F.2d at 938. More recently, the same court has stated:

"The established tests for determining whether documents are 'confidential' . . . within the meaning of Exemption 4 are that the [material] must be of the sort not customarily disclosed to the public and that disclosure . . . must not be likely to either impair the government's ability to obtain necessary information in the future or cause substantial harm to the competitive position of the person from whom the information is obtained." *Pacific Architects & Eng. Inc. v. Renegotiation Board,* 164 U.S.App.D.C. 276, 505 F.2d 383, 384 (1974) (citations omitted)

 The agency refusing to disclose requested documents has the burden of demonstrating the applicability of a particular FOIA exemption; the Act "does not permit a bare claim of confidentiality to immunize agency files from scrutiny." *Id.* The material withheld must be shown to be "independently confidential" based on its contents, and entitled to a "reasonable expectation of privacy." *Ditlow v. Volpe,* 362 F.Supp. 1321, 1324 (D.D.C.1973), citing *Fisher v. Renegotiation Board,* 153 U.S.App.D.C. 398, 473

F.2d 109, 113 (1972); *Getman v. NLRB,* 146 U.S.App.D.C. 209, 450 F.2d 670, 675 (1971); *Grumman Aircraft Engineering Corp. v. Renegotiation Board,* 138 U.S. App.D.C. 147, 425 F.2d 578, 580 (1970); *M. A. Schapiro & Co. v. SEC,* 339 F.Supp. 467, 470–471 (D.D.C.1972). Defendants have not remotely sustained their burden. They have failed to present a single affidavit by a member of the FTC or its staff which states the basis for concluding the documents in question are confidential or privileged. Nor has the government made any attempt to scrutinize the documents individually before blocking out identifying details. The FTC excuses its lack of proof with the bold statement that "Because these documents number in the hundreds, it would be wholly impractical to make . . . factual determinations [as to confidentiality] with regard to each." (Defendants' Reply Memorandum, May 21, 1974 at p. 9) [5] Although we recognize that a request for documents of the magnitude here saddles an agency with a substantial, time-consuming task, adherence to the FOIA's scheme requires that the job be done. The Court of Appeals for the District of Columbia analyzed the problems of proof and procedure under the Freedom of Information Act with great detail in *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) and *Cuneo v. Schlesinger,* 157 U.S. App.D.C. 368, 484 F.2d 1086 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). As the court in *Vaughn* and *Cuneo* noted, the earlier failure of courts to require the government to justify its refusal to disclose documents in any detail encourages it to argue for the widest possible exemption from disclosure for the greatest bulk of material. Moreover, since the govern-

5. Defendants added:
"It would be wholly impracticable for the Commission to determine, with regard to each person, information such as the following: whether the person provided information in confidence . . . whether the person waived any privilege of confidentiality; whether the Congressmen had reason to protect the names of such persons or any other information that might have been relevant." Defendants' Reply Memorandum, p. 15

ment—the party opposing disclosure—is the only side capable of confidently categorizing the type of information at issue, the "traditional adversary nature of our legal system" is seriously distorted, if not altogether hamstrung. To correct these deficiencies, the court required a particularized and specific factual justification from the government for exempting information, and a system of indexing and itemizing the contested documents that would correlate statements made in the government's justification with actual portions of the material. Given the reams of documents produced for *in camera* inspection in this case it is clear that, without the detailed justification and specificity of indexing required by *Vaughn* and *Cuneo,* a trial court, although provided with so little guidance, is nevertheless left with "the burden of actually determining whether the information is as the Government describes it." *Cuneo v. Schlesinger, supra,* 484 F.2d at 1091. See, in general, *Vaughn v. Rosen, supra,* 484 at 823–28; *Cuneo v. Schlesinger, supra,* 484 F.2d at 1091–92.

A glance at a few of the FTC's deletions immediately show that many of the documents cannot reasonably be deemed confidential. For example, in a letter to Senator Moss requesting information about legislation requiring the listing of octane content, the author's name and address are blocked out. (Ex. F to Plaintiff's Supplemental Memorandum of June 4, 1974) The author's name and address in a letter to Senator Talmadge requesting a copy of an FTC staff study for use in research for a college debate topic is similarly withheld. (Ex. K to Plaintiff's Supplemental Memorandum) As one court understandably commented, "The only thing more puzzling than why Plaintiffs would want these [facts] is why Defendants refuse to disclose them." *Ditlow v. Volpe, supra,* 362 F. Supp. at 1321.

▇ Nevertheless, Mobil is entitled to these facts and any others not protected by the FOIA's exemptions. Summary judgment is therefore deferred on this issue until such time as the defendants have submitted proper documentation of their claim. The defendants are directed to classify the documents in which identifying details have been deleted to indicate which documents they assert were received in confidentiality and those which are not. The Commission is further directed to submit affidavits by knowledgeable members of the FTC or its staff which provide "particularized and specific justification" for the deletions. *Cuneo v. Schlesinger, supra,* 484 F.2d at 1092. Because of the vast numbers of documents involved, this data need not refer separately to each document. However, any categorization of documents in groups must be clearly stated and justified. See *Pacific Architects & Eng. Inc. v. Renegotiation Board, supra,* 505 F.2d at 385 for examples of the information which the defendants are required to produce.

### C. *Exemption 7*

▇ The FTC further asserts that the deletions made are justified on the ground that the documents at issue are part of the file compiled and utilized by the FTC for an on-going investigation into the activities of the petroleum industry for possible violations of the Federal Trade Commission Act and that the identifying details in the documents are accordingly protected from disclosure by Exemption 7 of the FOIA.

It is undisputed that the FTC in fact conducted an investigation into the practices of the petroleum industry which resulted in the filing of a complaint against Mobil and other oil corporations. *In the Matter of Exxon Corporation, et al.,* FTC Docket No. 8934 (Ex. F to Complaint) The complaint is currently pending before the Commission. However, the pendency of law enforcement proceedings in and of itself does not establish the applicability of Exemption 7 to the contested deletions.

At the time the present motions were filed, Exemption 7 protected:

"investigatory files compiled for law enforcement purposes . . ." 5 U.S.C. § 552(b)(7)

Since then Congress has amended Exemption 7 to provide in pertinent part:

"Investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source . . . " Pub.L. 93–502, 88 (Stat.1563)

Although the amendment was not enacted until November 20, 1974 to become effective ninety days later, the Supreme Court held in *NLRB v. Sears, Roebuck & Co.* that any decision on the applicability of Exemption 7, even on a motion filed prior to the enactment of the revised version "would have to be under the Act, as amended." *Supra,* 421 U.S. at 165, 95 S.Ct. at 1523.

Absent any supporting affidavits, it is clear that the FTC cannot sustain its burden of demonstrating that the revelation of the identifying details "would interfere with enforcement proceedings, . . . constitute [an] . . . unwarranted invasion of personal privacy, disclose the identity of an informer, or disclose investigative techniques and procedures." S.Conf.Rep.No.93–1200 at 12, U.S.Code Cong. & Admin.News, pp. 6285, 6291 (1974), quoted in *NLRB v. Sears, Roebuck & Co., id.* To the extent that the Commission means to argue that Exemption 7(D) as amended, ("disclose the identity of a confidential source") is applicable, it must establish that any claim of confidentiality meets the standard of Exemption 7 as explained in the Conference Report accompanying the bill:

"The substitution of the term 'confidential source' in section 552(b)(7)(D)

is to make clear that the identity of a person other than a paid informer may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."

Yet it taxes credulity to infer for example, that all or perhaps even most unsolicited letters of constituents to their Congressman are sent with an express or implicit belief that such communications are to remain confidential.[6]

For the reasons stated, as in the case of the Exemption 4 and issue 1B discussed above, summary judgment on the validity of the deletions of identifying details is deferred pending submission by defendants of affidavits consistent with the requirements of *Vaughn v. Rosen, supra; Cuneo v. Schlesinger, supra,* and *Pacific Architects & Eng. Inc. v. Renegotiation Board, supra,* setting forth facts which establish the applicability of Exemption 7.

## II.

### *Certain Communications Between the Commission and State Agencies*

On the ground that they are exempt from disclosure as intra-agency memoranda (Exemption 5) and part of active investigatory files (Exemption 7) the FTC entirely withheld two memoranda which are communications with state agencies.

#### A. *Exemption 5*

Before the Supreme Court's recent decisions in *NLRB v. Sears, Roebuck, supra,* and *Renegotiation Board v. Grumman Aircraft,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975), Exemption 5, which protects intra-agency memoranda

---

**6.** The Conference Report explained the meaning of the term "confidential source" in the context of exemption 7(D), as amended. However, exemption 4 also limits protection from disclosure to "trade secrets and commercial or financial information" which are "privileged or confidential." 5 U.S.C. § 552(b)(4). In submitting affidavits to the court to support their assertion of protection under exemption 4, in

accordance with our instruction in the text above, the FTC should apply the Conference Report definition of confidentiality as to exemption 7 since the same term used twice in one statute should, absent evidence to the contrary, be consistently interpreted. See *Davies Warehouse Co. v. Bowles,* 321 U.S. 144, 149–59, 64 S.Ct. 474, 88 L.Ed. 635 (1944).

from disclosure, was consistently interpreted to protect only materials reflecting "deliberative or policy-making process" and to require the release of:

> "compiled factual material or purely factual material contained in deliberative memoranda and severable from its context . . . " *Environmental Protection Agency v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973).

■ In *NLRB v. Sears, Roebuck & Co.,* the Supreme Court noting that the purpose of Exemption 5 was to "prevent injury to the quality of agency decisions," stated:

> "The quality of a particular agency decision will clearly be affected by the communications received by the decisionmaker on the subject of the decisions prior to the time the decision is made. However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed." *Supra,* 421 U.S. at 151, 95 S.Ct. at 1517.

On the basis of this analysis, the Supreme Court distinguished between intra-agency memoranda written prior to and in connection with formulation of an agency decision—which fall within Exemption 5—and communications made after a decision is reached and designed to explain it—which are not. *Id.* at 151, n. 19, and 152, 95 S.Ct. 1504. *Accord, Renegotiation Board v. Grumman Aircraft, supra.*

■ After carefully examining the memoranda *in camera,* we find that they are the communications which Exemption 5, as interpreted by the Supreme Court, does protect. The first consists of a discussion of the relationship between separate investigations by the FTC and a State Attorney General into pricing policies of major brand oil suppliers and fits the definition of a pre-decisional communication set forth in *NLRB v. Sears, Roebuck.* The second is a summary of an interview between a staff member of the Commission and officials of a State agency written to instruct the FTC as to the jurisdiction and decision-making process of the state agency. Much of the memorandum presents matters of opinion and policy. Parts of the memorandum merely summarize facts about the state agency, and may well be a matter of public record already. However, as the court in *Montrose Chemical Corp. v. Train* stated:

> "Exemption 5 was intended to protect not simply deliberative material, but also the deliberative process of agencies. When a summary of factual material on the public record is prepared by the staff of an agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process and is exempt from disclosure under exemption 5 of FOIA." 160 U.S.App.D.C. 270, 491 F.2d 63, 70–71 (1971)

The facts in the memorandum are presented in the context of analyzing considerations of pricing crude oil and meet the *Montrose* test. That this document summarizes the deliberative processes of a state agency as distinct from the FTC itself, does not render the exemption inapplicable. As the Supreme Court explained:

> "By including *inter*-agency memoranda in Exemption 5, Congress plainly intended to permit one agency possessing decisional authority to obtain written recommendations and advice from a separate agency . . . " *Renegotiation Board v. Grumman Aircraft, supra,* 421 U.S. at 188, 95 S.Ct. at 1502.

The rationale applies with equal force to advice received from state as well as federal agencies.

Because we have determined that the two documents are protected by Exemption 5, we do not consider the applicability of Exemption 7.

## III.

### Communications Between the FTC and Other Federal Agencies

From the group of documents which contained communications between the FTC and other federal agencies, defendants withheld in whole or in part three categories of materials.

### A. Staff Memoranda

■ The first set of documents contains three letters written by FTC officials to staff members of other federal agencies and a FTC staff report on the petroleum industry.

Having examined the three letters *in camera,* we find that they contain matters of policy and opinion and present no facts which are severable from policy statements. Accordingly, they are exempt from disclosure under Exemption 5 of the FOIA. *EPA v. Mink, supra.*

The FTC justifies its refusal to disclose the staff report on the ground that it is protected by Exemptions 5 and 7 of the Act. Although in this instance defendants here again failed to submit affidavits to support their claim as to this report, they assert in their memorandum that the report was prepared "as part of an on-going investigation into the activities of the petroleum industry for possible violations of the Federal Trade Commission Act." (Defendants' Memorandum filed November 11, 1974, pp. 14–15) After examining the report *in camera,* we find that because it contains a close analysis of a currently pending investigation by the FTC, it is protected from disclosure under Exemption 5 as interpreted by *NLRB v. Sears, Roebuck & Co., supra* and *Renegotiation Board v. Grumman Aircraft, supra.* (See discussion at Pt. IIA, *supra*) *Accord, Exxon Corp. v. FTC,* No. 1928–73 (D.D.C. August 14, 1974).

### B. Other Communications

■ The next set of documents consists of 84 items which defendants also contend are protected by Exemptions 5 and 7. The documents have been examined *in camera* and are accurately described by defendants as containing:

"1) Memoranda reflecting the information received in oral communications between staff members of the Commission and other agencies;

2) Communications reflecting the liason between the Department of Justice and the Commission in their investigating efforts including communications requesting permission to review confidential files; and

3) Communications between the commission and other agencies exchanging information or seeking information." (Defendants' Memorandum filed April 1, 1974, p. 27)

Most of the communications in this category contain policy discussions and opinions and accordingly fall within Exemption 5 as interpreted by *EPA v. Mink, supra.*

However, as the FTC concedes, not every one of these documents contains legal analysis or policy recommendations. (Defendants' Memorandum filed April 1, 1974, pp. 28–29). Nevertheless, the defendants argue that these communications are exempt because they are "an integral part of the Commission's procedure in evaluating and taking action on matters within its jurisdiction" and, as such "are entwined in the chain of the Commission's deliberative functions which take place prior to any agency action." *Id.* at p. 29.

■ We disagree. As noted earlier, although in the context of Exemption 4, the applicability of an exemption must be determined on the basis of the contents of the communication itself rather than the chain of events which prompted its transmittal. *Ditlow v. Volpe, supra,* 362 F.Supp. at 1324 and cases cited therein. It is true that the Supreme Court recognized in *NLRB v. Sears, Roebuck* that "an understanding of the function of the documents in issue in the context of the administrative process which generated them" was crucial to a determination of the applicability of Ex-

emption 5. *Supra,* 421 U.S. at 138, 95 S.Ct. at 1510. However, that statement was made with regard to whether documents which on their face contained opinion and policy deliberation were nevertheless subject to disclosure. In contrast, the documents requested in the category presently under discussion are devoid of opinion. As such, they do not fall within the parameters of Exemption 5.

There remains the question whether the exemption for investigatory files applies. As noted earlier, a recent amendment to the FOIA confines that exemption to limited circumstances. While it appears fairly certain that the documents in question do not pass most of the alternative tests allowed by Exemption 7 as amended, the FTC could conceivably demonstrate that disclosure of the requests for information which has been transmitted between federal agencies would, in and of itself, "interfere with enforcement proceedings" and thereby meet the standard of § 552(b)(7)(A). We therefore defer decision on this issue in order to allow defendants to compile the documents which are requests for information into one indexed category and to submit affidavits in conformance with the standards set forth in Section IC of this memorandum to demonstrate the applicability of Exemption 7 to these documents.

## C. Referrals of Complaints

 The FTC has blacked out the names and addresses of complainants from 61 letters which referred citizen complaints to the Department of Justice. It claims the deletions are justified under Exemptions 3, 4 and 5 of the FOIA. The Commission has also withheld names and addresses contained in letters it received from the Department of Justice and, in a limited number of cases, has refused to disclose any of the contents of some such referrals. Defendants contend that the decision to withhold these referrals is warranted by Exemptions 3, 4, 5 and 7 of the Act.

Turning first to the documents that have been entirely withheld, an *in camera* inspection of this material establishes that it is protected from disclosure by Exemption 5 as interpreted by *NLRB v. Sears, Roebuck & Co., supra,* (see discussion at point IIA of this memorandum) because they relate to opinion and decisions involving pending investigations of oil companies and petroleum issues.

 As to the deletion of names and identifying details, to the extent that the complainants are customers of oil companies or related business concerns, the deletions are mandated by section 6(f) of the FTCA and consequently fall within the ambit of Exemption 3. However, a number of deletions consist of the names of Congressmen or other federal officials and are not similarly protected. Exemption 3 does not apply to such erasures. (See discussion at point IA of this memorandum) Nor can they be viewed as falling within Exemption 5 of the FOIA, since they are neither policy nor opinion. A determination as to the applicability of Exemption 4 must be deferred pending submission by defendants of affidavits which establish the basis for the FTC's conclusion that the names of people who are not "customers" and other deleted material is confidential or privileged.

The motions are disposed of as indicated above.

It is so ordered.